IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:20-cv-00003 |
| UNITED STATES DEPARTMENT OF DEFENSE; MARK T. ESPER, in his official capacity as Secretary of Defense; RYAN D. MCCARTHY, in his official capacity as Secretary of the Army; THOMAS B. MODLY, in his official capacity as Acting Secretary of the Navy; BARBARA BARRETT, in her official capacity as Secretary of the Air Force; CHAD WOLF, in his official capacity as Acting Secretary of Homeland Security, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**NVLSP'S REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION**

George P. Sibley III (VSB No. 48773)
Matthew R. McGuire (VSB No. 84194)
J. Pierce Lamberson (VSB No. 93616)
Sarah Ingles (VSB No. 94812)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 344-8821
Facsimile: (804) 343-4630
mmcguire@HuntonAK.com

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

ARGUMENT .....................................................................................................2

I. NVLSP will likely prevail on the merits. ...................................................4

A.      Publishing decisions to the Reading Room constitutes discrete agency
action...................................................................................................5

B.      The DOD's legal obligation to redact personally identifying information
does not eliminate its legal obligation to maintain a public database...................7

C.      The DOD's continued failure to publish decisions to the Reading Room
constitutes an unreasonable delay. ......................................................8

II. NVLSP suffers ongoing irreparable injury.................................................11

III. The balance of the equities weighs in favor of granting an injunction. ...................14

IV. The public interest strongly favors an injunction.....................................15

CONCLUSION................................................................................................15

CERTIFICATE OF SERVICE ......................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of New York v. U.S. Department of Defense*,
913 F.3d 423 (4th Cir. 2019)........................................................................5, 6, 7

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017)........................................................................2

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999)........................................................................8

*Geneme v. Holder*,
935 F. Supp. 2d 184 (D.D.C. 2013) ........................................................................11

*Golden & Zimmerman, LLC v. Domenech*,
599 F.3d 426 (4th Cir. 2010)........................................................................7

*In re Microsoft Corp. Antitrust Litig.*,
333 F.3d 517 (4th Cir. 2003)........................................................................2

*Muwekma Tribe v. Babbitt*,
133 F. Supp. 2d 30 (D.D.C. 2000) ........................................................................11

*Norton v. S. Utah Wilderness All. (SUWA)*,
542 U.S. 55 (2004) ........................................................................5, 6

*Potomac Elec. Power Co. v. I.C.C.*,
702 F.2d 1026 (D.C. Cir. 1983) ........................................................................9

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) ........................................................................4, 6

*South Carolina v. United States*,
907 F.3d 742 (4th Cir. 2018)........................................................................8, 14

*Telecomm. Research & Action Ctr. (TRAC) v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........................................................................8, 9, 10, 11

*Village of Bald Head Island v. U.S. Army Corps of Eng's*,
714 F.3d 186 (4th Cir. 2013)........................................................................6

*Winter v. Nat'l. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................................................2

**Statutes**

5 U.S.C. § 551(13) ............................................................................................................... 7

5 U.S.C. § 555(b) ............................................................................................................... 8

5 U.S.C. § 706(1) ............................................................................................................. 11

10 U.S.C. § 1552 ..................................................................................................... 4, 9, 14

**Other Authorities**

32 C.F.R. § 723.11 ............................................................................................................ 9

32 C.F.R. § 70.8 .......................................................................................................... 3, 13

DODI 1332.28 ..................................................................................................... 3, 6, 9, 13

SECNAVINST 5420.193(11)(b)(1) (Nov. 19, 1997) ....................................................... 9

**INTRODUCTION**

More than ten months ago, the Defendants (for simplicity, the "DOD") directly violated federal law when it removed from its public Electronic Reading Room more than 200,000 final Board decisions from which all personally identifiable information had already been redacted. NVLSP Br. 1, ECF No. 22. Although no one knew at the time what prompted the DOD to cripple NVLSP and other service providers in their ability to effectively represent their veteran clients, *id.* at 6–7, the DOD has now informed the Court and the public that it was violating a different legal obligation in a small percentage of the Board decisions by not properly redacting veterans' personally identifiable information from the publically available decisions. DOD Br. 7, ECF No. 27.[1]

Although the DOD does not mention it in its brief, it has presented a timeline for fully restoring decisions to the Reading Room that would be acceptable to NVLSP. In a February 6, 2020, letter to U.S. Senator Tammy Baldwin, the DOD stated that "[a]ll removed cases will be returned to the website not later than April 30, 2020," and new cases would start being posted a month later. Ex. A.[2] The DOD has previously broken its promises when it comes to publishing decisions, *see* NVLSP Mot. 3–4, ECF No. 21, so a court order requiring it to follow through is plainly warranted. As further explained below,

---

[1] NVLSP has reason to believe that the DOD may have had to start the redaction process all over for all decisions because they may not have archived them properly or otherwise deleted the already-redacted copies after removing them from the Reading Room. Ex. B ¶ 5.

[2] While the Secretary of the Army sent the letter in reference to only the Army's Boards, the DOD has offered no basis for treating the other defendants differently.

NVLSP has fully carried its burden of showing that it is entitled to the preliminary injunction requested.  *See also* NVLSP Br. 7–11.

## ARGUMENT

To begin, the DOD incorrectly characterizes this motion as seeking a mandatory injunction, *see* DOD Br. 10—all NVLSP seeks is a return to the status quo that existed before the DOD's unlawful actions in April 2019.  "[I]t is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions . . . *such an injunction restores rather than disturbs, the status quo ante*."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)) (emphasis added); *see also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003) (noting that mandatory injunctions are different because they "do not preserve the status quo").  Thus, to obtain the preliminary injunction it seeks, NVLSP need only show that it (1) "is likely to succeed on the merits," (2) "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest."  *Winter v. Nat'l. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  For the reasons given previously, NVLSP Br. 7–11, and below, NVLSP has carried its burden.

Additionally, since the filing of the motion for preliminary injunction, it has become apparent that the DOD has compounded its legal violations as it relates to the publication of decisions.  Although the DOD has begun to restore prior Board decisions to the Reading Room, it failed to restore the search mechanism that it previously provided NVLSP and the public for more than ten years to enable advocates to look for decisions on certain topics— for example, PTSD or how the Boards interpret particular legal requirements.  Before the sudden removal of 245,000 decisions in April 2019, the DOD provided users of the Reading

Room with a search mechanism that allowed them to research prior Board decisions much as lawyers research prior judicial decisions on Lexis or Westlaw. Ex. C ¶ 3. While that search function could have been more effective for finding relevant decisions, *see* Compl. at 7, it at least provided a base-level means of filtering decisions by topic.

NVLSP reasonably expected that Defendants would republish decisions to the Reading Room as they existed before—i.e., with the preexisting search mechanism. Given the current lack of a search function on the website, NVLSP can only parse through the approximately 18,593 documents in the Reading Room one-by-one to identify those decisions that are relevant to a particular issue.

DODI 1332.28 prohibits the DOD from eliminating the Reading Room's search function.[3] Under that instruction, the DOD is required to publish decisions to the Reading Room in a "usable and concise form so as to enable the public, and those representing applicants before the DRBs, *to isolate from all decisions those cases that may be similar to an applicant's case* and that indicate the circumstances under or reason for (or both) which the DRB or Secretary concerned granted or denied relief." DODI 1332.28, ¶ E3.12.4.1 (emphasis added). The emphasized language is plainly the definition of a search feature. As part of the preliminary injunction order, the Court should require the DOD to return to the status quo—put the Reading Room back the way it was in April 2019, including the search functionality.

---

[3] The DOD admits that it never rescinded 32 C.F.R. § 70.8(*l*), DOD Br. 5 n.2, and NVLSP thus maintains that it continues to apply to the Reading Room in its current form. Nevertheless, for the purpose of responding to the DOD's arguments, NVLSP will refer to DODI 1332.28 throughout this brief because it substantially overlaps with § 70.8(*l*).

In apparent recognition that it failed to restore the preexisting search mechanism, the government suggests that a reasonable alternative exists:  NVLSP and other advocates can simply file a request for individual Board decisions.  DOD Br. 3, 22.  This may work for a veteran who wants a copy of his or her own decision.  But as the attached declarations show, this work-around does not permit advocates to research prior Board decisions.  For example, one attorney requested Board decisions related to "discharge upgrades for soldiers, with mental health issues, who have been AWOL for more than 180 days," and the Board rejected the request, stating "That would not be possible.  We have thousands of cases that involve PTSD."  Ex. C, ¶ 5; Ex D.

## I.      NVLSP will likely prevail on the merits.

The DOD cannot dispute that 10 U.S.C. § 1552, federal regulations, and a DOD Directive require these decision to be made publicly available online in the Reading Room.  NVLSP Br. 3–5 (quoting relevant provisions).  Recognizing that fact, the DOD makes a number of arguments that all boil down to the following:  the statute, regulations, and directive requiring decisions to be published cannot be judicially enforced.  *See* DOD Br. 11–22.  That is simply not accurate when a federal "agency is under an unequivocal statutory duty to act."  *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) (abrogated on other grounds by the 1990 Amendments to the Clean Air Act).  When that happens, as it did here, the "failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review."  *Id.*  And, under that review, the DOD has plainly failed to act as it is unequivocally required.

## A. Publishing decisions to the Reading Room constitutes discrete agency action.

The DOD devotes its brief to painting NVLSP's request for preliminary injunction as a "broad programmatic" attempt to invade and superintend the administrative process. *See e.g.*, DOD Br. 16. The DOD is mistaken.

As NVLSP's motion and supporting brief makes clear, it simply seeks to enforce a circumscribed, discrete statutory and regulatory requirement that the DOD post decisions to a public website. NVLSP Br. 7–9. To be sure, APA failure-to-act claims are limited to discrete agency action in order "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 66 (2004). That is why the Fourth Circuit in *City of New York v. U.S. Department of Defense*, 913 F.3d 423 (4th Cir. 2019), drew a sharp distinction between claims "about the *quality* of" information in the agency database and "*access* to the" database. *Id.* at 430 (emphasis added). NVLSP's requested injunction, however, plainly is seeking *access* to decisions it has a legal right to access, which is precisely the type of discrete agency requirement that "[c]ourts are well-suited to review[]." *Id.* at 431; *see also* NVLSP Br. 7–9.

Notwithstanding NVLSP's unequivocal right to access these decisions, the DOD argues that NVLSP "is essentially demanding a general judicial review of Defendants' day-to-day operations." DOD Br. 17. Nothing in the preliminary injunction briefing supports that claim. NVLSP has no interest in superintending how the Boards operate their decision-making process or even how the DOD goes about publishing the Boards' decisions—all NVLSP wants is for the DOD to comply with the unequivocal legal requirements and perform its non-discretionary, ministerial duty of making the Boards' decisions publicly

available within a reasonable amount of time.  *See* NVLSP Mot. 1–4; *accord* DODI 1332.28, ¶ E3.12.1.[4]

The DOD relies heavily on *City of New York*, but that case fully supports NVLSP's position.  *See* DOD Br. 12–13, 16–17.  In *City of New York*, three municipalities sued under the APA, seeking to compel changes to a federal background check system.  913 F.3d at 429. As previously noted, the Court expressly distinguished between challenges to the adequacy of the agency system and challenges merely seeking access to the system.  *Id.* at 430.  The Court drew that distinction because the APA allows courts to review "acts that are specific enough to avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial judgments for those of the executive branch, and substantial enough to prevent an incursion into internal agency management."  *Id.* at 432.  In short, *City of New York* expressly permits the relief NVLSP is seeking—access to decisions of the Boards that the DOD is required to publicly post.

Finally, the DOD argues at length that its decision not to post the Boards' decisions is not "agency action" under the APA.  DOD. Br. 13–15.[5]  That argument has already been expressly rejected by the D.C. Circuit.  *Sierra Club*, 828 F.2d at 793 ("[I]f an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review.").  Even if *Sierra Club* had not

---

[4] Asking that the DOD be required to comply with its statutory obligation to post decisions looks nothing like the broad attacks contemplated in *SUWA*, 542 U.S. at 66–67, or, for that matter, the plaintiff's challenge *to the implementation* of an Army Corps of Engineers' project in *Village of Bald Head Island v. U.S. Army Corps of Eng's*, 714 F.3d 186, 193 (4th Cir. 2013) (concluding that the Village was "essentially 'demand[ing] a general judicial review of the [Corps'] day-to-day operations' in maintaining [a harbor channel]" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990))).

[5] The DOD does not argue that any agency is not "final."

already resolved this issue thirty years ago, an agency's decision to post (or not to post) decisions fits comfortably within the APA's definition of "agency action." Under the APA, "'agency action' includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The DOD's posting of decisions qualifies as agency "relief" because it provides NVLSP and the public with the relief that statutes and regulations require the DOD to provide: access to Board decisions and a usable method for searching those decisions. Likewise, a discrete, statutorily-imposed publication requirement equally constitutes the "equivalent" of other enumerated agency acts. *See City of New York*, 913 F.3d at 431 (explaining that gravamen of the statutory terms is "acts that are 'circumscribed' and 'discrete'").[6] Much like agency "rules," for example, published decisions put the public on notice of relevant policies so that members of the public can conduct their affairs accordingly.

In sum, NVLSP has challenged only the DOD's discrete action in failing to publish decisions of the Boards in a manner accessible to the public. That non-discretionary act is mandated by federal statute, regulations, and directives. Thus, the APA provides the proper basis for reviewing the DOD's failure to act.

**B.      The DOD's legal obligation to redact personally identifying information does not eliminate its legal obligation to maintain a public database.**

The DOD makes much of the fact that it has overlapping legal obligations—it is required to both protect individual veteran's personally identifying information by redacting

---

[6] Because NVLSP seeks to enforce its congressionally-mandated right to access Board decisions, the DOD's reliance on *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426 (4th Cir. 2010), is inapposite. Unlike the publication mandate in this case, no statutory or regulatory requirement forced the ATF to publish the Reference Guide at issue. *See id.* at 432.

it before publishing a decision, *see* DOD Br. 18, and it is required to publicly post decisions,

*see* NVLSP Br. 8–9. To be sure, NVLSP does not want the DOD publishing veterans'

personally identifying information, but ensuring compliance with that legal requirement is

not a basis for violating another. In any event, NVLSP wants what the DOD claims it wants,

*see* Ex. A: a timely return to the status quo that existed in April 2019 before the decisions

were suddenly taken away. Indeed, but for the DOD's inability abide by the voluntary

agreement it reached with NVLSP last month, this portion of the case would already be over.

*See* NVLSP Notice of Withdrawal 1–2, ECF No. 15.[7]

> ### C. The DOD's continued failure to publish decisions to the Reading Room constitutes an unreasonable delay.

The DOD argues that it has not unreasonably delayed action, relying principally on

*Telecomm. Research & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). Not so.

The APA requires that, "within a reasonable time, each agency shall proceed to

conclude a matter presented to it." 5 U.S.C. § 555(b). Moreover, the Act instructs that a

reviewing court "shall compel agency action . . . unreasonably delayed." *Id.* at § 706.

"[O]nce a court deems agency delay unreasonable, it must compel agency action." *See*

*Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 (10th Cir. 1999). The *TRAC* case

summarized the "hexagonal contours" of the unreasonable delay standard as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of
> reason"; (2) where Congress has provided a timetable or other indication of
> the speed with which it expects the agency to proceed in the enabling statute,

---

[7] Given the fact that the DOD took more than six months to review 2,364 decisions, *see* DOD Br. 7–8, and that the DOD has already broken its word once in this case about the deadlines for re-publishing decisions, a court order requiring the DOD to adhere to a time schedule is appropriate. *See South Carolina v. United States*, 907 F.3d 742, 765 (4th Cir. 2018) (affirming the principle that "a district court retains discretion to order agency compliance, including by fixing firm deadlines if appropriate, and even when full compliance may be unlikely").

that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citations omitted).

*First*, the DOD's delay in posting decisions clearly fails the "rule of reason." *Id.* at 79. "[E]xcessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decisionmaking into future plans." *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1038 (D.C. Cir. 1983). In this case, the DOD has caused an excessive delay in its fulfillment of its statutory obligations by not posting a single Board decision for public inspection for nine months, by posting only 18,000 of the 245,000 pre-April 2019 cases to this day, and providing no search engine for the small number of reposted decisions.

*Second*, "where Congress has provided a timetable *or other indication* of the speed with which it expects the agency to proceed . . . [it] may supply content for this rule of reason." *TRAC*, 750 F.2d at 80 (emphasis added). While 10 U.S.C. § 1552 contains no concrete deadline for posting, regulations like DODI 1332.28, ¶ E3.12.1, provide that DRB documents "shall be made available *promptly* for public access after a notice of final decision is sent to the applicant." (emphasis added). Moreover, regulations governing specific Boards require that decisions be "promptly made available for public inspection and copying." *See* 32 C.F.R. §723.11; SECNAVINST 5420.193(11)(b)(1) (Nov. 19, 1997). Contrary to Defendants' arguments, these instructions do provide a clear indication of the

"prompt" speed at which Defendants are expected to publish decisions—a rate they are currently failing to meet.

     *Third*, delays are less reasonable when human health and welfare are at stake. *TRAC*, 750 F.2d at 80. The DOD deems this factor "not applicable," because from its vantage point, its actions do not implicate veterans' health and welfare. DOD Br. 21. But that is not the case. Veterans seek a change in status from the Boards in order to gain access to critical benefits like health insurance, VA disability compensation, and military retirement pay, which directly relate to their health and welfare. ECF No. 22-1, Ex. A at 2, ¶¶ 2-3. By denying veterans and their advocates access to the Boards' decisions, the DOD is preventing them from making the strongest case possible as they attempt to gain access to important services. Ex. C ¶ 3; ECF No. 22-1, Ex. A at 4–5, ¶ 11. The DOD is wrong to try and turn a blind eye to the practical health and welfare consequences that its ongoing delay is causing to veterans.

     *Fourth*, courts consider the "effect of expediting delayed agency action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The DOD claims that, in order to restore the previously posted decisions faster, it may have to redirect its resources from processing current applications. DOD Br. 21. Tellingly, the DOD does not assert that that *will* happen—only that it *could*. But even so, while efficient resolutions of appeals is important, the success of those appeals is also a priority. If veterans are being denied the ability to identify relevant decisions to support their requests for relief, then the swiftness with which their applications are processed is significantly diminished. *See* Ex. B ¶ 3 (noting that the DOD declined to provide relevant opinions to a veteran's advocate unless paid $28,668 and stated it maintained only two years of decisions, which were not indexed);

Ex. C ¶ 5 (describing how the DOD declined to provide decisions about PTSD to a veteran's advocate); Ex. D.

*Fifth*, as discussed below, *see infra* Part II, NVLSP suffers prejudice every day that Defendants fail to meet their statutory obligations, and that harm will continue until Defendants are committed to a deadline by court order. As further discussed below, the significant shortcomings of the DOD's work-around system fail to mitigate that harm.

*Sixth*, impropriety is not required to find that an agency action has been unreasonably delayed. *TRAC*, 750 F.2d at 80. The DOD claims that this factor is not applicable because it is not intentionally delaying the posting of decisions to the Reading Room. *See* DOD Br. 22. The DOD misses the point of the sixth factor, which is that unreasonable delay can be found even in the absence of impropriety. *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 36 (D.D.C. 2000) ("[I]mpropriety is not essential to a finding of unreasonable delay."). Defendants' good intentions do not resolve the fact that they have unreasonably delayed the posting of Board decisions. *Geneme v. Holder*, 935 F. Supp. 2d 184, 193 (D.D.C. 2013).

In short, NVLSP is likely to prevail on the merits that the DOD's failure to promptly return decisions to the Reading Room constitutes an unreasonable delay under 5 U.S.C. § 706(1).

## II.     NVLSP suffers ongoing irreparable injury.

Absent preliminary injunctive relief, NVLSP—and the veterans it represents—will continue to suffer irreparable harm. NVLSP Br. 9–10.[8] The DOD's entire counterargument

---

[8] Without citation, the DOD asks this Court to "ignore . . . arguments that some unnamed veteran [NVLSP] might represent will suffer irreparable harm." DOD. Br 22. Regardless of whether NVLSP identifies a specific person, it is self-apparent that veterans are being actively harmed by the DOD's actions in this case, as reflected by the new

is that NVLSP suffers no irreparable injury because "as stated on the website, it can contact specific boards at any time to obtain copies of relevant decisions."  Dkt. No. 27, at 3, 22–23.

*First*, offering up a cumbersome backdoor process does not obviate the DOD from complying with its mandatory publication requirement.  Section 1552(a)(5) requires that Board decisions "shall be made available to the public in electronic form on a centralized website," and DOD Directive 1332.41 states that the Reading Room "shall contain all decisional documents since 1996."  Whether or not individual claimants can request specific decisions, the DOD continues to defy these plain statutory mandates by maintaining an incomplete online database.

*Second*, the DOD's work-around does not actually work in practice.  *See* Ex. B; Ex. C.  As the attached declarations show, the system does not allow NVLSP and other pro bono service providers to conduct research to find relevant prior Board decisions.  In one case, an attorney requested decisions related to "discharge upgrades for soldiers, with mental health issues, who have been AWOL for more than 180 days" from the Army contact listed on the Reading Room website.  Ex. C ¶ 5; Ex. D.  In response, the Army contact stated, "That would not be possible.  We have thousands of cases that involve PTSD."  *Id.*

In another case, a student at the Veterans Legal Clinic at Harvard Law School submitted a request per the instructions on the Reading Room website, asking for all of the decisions "based on the repeal of Don't Ask, Don't Tell and decisions where the [Board] had awarded certain forms of relief."  Ex. B ¶ 3.  That student initially was told by the relevant Board that "it had over one thousand Don't Ask, Don't Tell-related cases and that providing

---

applications the DOD needs to process.  *See* Ex. 1, DOD Br. (stating that resources may have to be redirected from processing new applications).

them would require extensive legal review," and that, as a result, the Clinic would have to pay "a fee of $28,668" to obtain the decisions. *Id.* (noting that the Board "denied [a] request for a fee waiver"). Follow-up conversation with one of the Board's staff members in an attempt to narrow the request revealed that the Board "may not have archived copies of decisions, that the decisions may have been deleted after initially being posted to the Reading Room, and that the decisions may not have been archived prior to being removed from the Reading Room." *Id.* ¶ 5. Moreover, the staff member "reported that the [Board] only had decisions from the past two years available to provide in response to the request— not decisions from earlier years." *Id.* Even after the advocate eventually settled on an agreed request with the Board, the CD containing the decisions "never arrived," having "been lost by the United States Postal Service." *Id.* ¶ 7.

As these ordeals demonstrate, the DOD's proffered work-around solution for veterans seeking Board decisions does not resolve the irreparable harm NVLSP and veterans are suffering on a daily basis.

Even if the DOD were "willing and able to accommodate" requests from veterans and their advocates, the work around is a far cry from a public, searchable database, which allows an applicant to "isolate from all decisions those cases that may be similar to an applicant's case and that indicate the circumstances under or reasons for (or both) which the DRB or the Secretary concerned granted or denied relief." DODI 1332.28, ¶ E3.12.4.1; *see also* 32 C.F.R. § 70.8(*l*)(4). Under the DOD's interim solution, veterans and advocates must send an email request describing, as best they can, the type of case they are seeking and then wait for a response with the decisions. If the DOD's response fails to address the applicant's

situation, or the relevant Board cannot find responsive cases, then the applicant has no mechanism to obtain the decisions.[9]

## III.    The balance of the equities weighs in favor of granting an injunction.

Even considering the DOD's recently-disclosed (but apparently longstanding) problem with redacting personally identifying information in a very small percentage of posted decisions, the balance of the equities tilts in favor of granting an injunction.

The DOD claims it is "working diligently to restore the Electronic Reading Room website without [personally identifying information] in compliance with the dual requirements of § 1552." DOD Br. 23. And in a letter to Senator Baldwin, the DOD stated: "All removed cases will be returned to the website not later than April 30, 2020. Posting of new cases will resume not later than May 31, 2020." Ex. A. NVLSP recognizes that decisions need to be properly redacted before they are published to the Reading Room and, as a result, NVLSP is amenable to the deadlines the DOD gave in response to Senator Baldwin's letter. The DOD's prior refusal to live up to agreed-upon deadlines demonstrates that an injunction is necessary to "ensure that the delinquent agency makes serious, 'vigorous' attempts to fulfill its statutory responsibilities." *South Carolina*, 907 F.3d at 765 (citation omitted) (collecting cases and affirming the principle that "a district court retains discretion to order agency compliance, including by fixing firm deadlines if appropriate, and even when full compliance may be unlikely").

---

[9] As described in the opening brief, as a result of the DOD's incomplete database, NVLSP has been forced to abandon projects with partner firms that would have furthered NVLSP's mission. *See* ECF No. 22-1, Ex. A at 4, ¶ 10.

**IV.    The public interest strongly favors an injunction.**

The public interest further warrants granting a preliminary injunction to compel the DOD to comply with its publication obligations. In its opposition, the DOD again uses its separate violation of the statutes requiring personally identifying information to be redacted as the reason why the public interest supports further delays in publishing Board decisions. DOD Br. 24. But as emphasized throughout, NVLSP seeks only to hold the DOD to the reasonable deadlines with which it has publicly stated (again) that it intends to comply. NVLSP believes that an injunction requiring the publication of past Board decisions on the DOD's publicly stated timeline allows sufficient time for the DOD to screen decisions in its database without jeopardizing the public's interest in protecting veterans' privacy rights. Moreover, such a deadline will ensure that NVLSP and the veterans it represents are able to again advocate for the best possible result before the Boards.

**CONCLUSION**

The Court should enter a preliminary injunction in the form requested by NVLSP in its motion, modified as necessary to reflect the DOD's commitment in the letter to Senator Baldwin.

Respectfully submitted,

NATIONAL VETERANS LEGAL
SERVICES PROGRAM

By:    */s/ Matthew R. McGuire*
     George P. Sibley III (VSB No. 48773)
     Matthew R. McGuire (VSB No. 84194)
     J. Pierce Lamberson (VSB No. 93616)
     Sarah Ingles (VSB No. 94812)
     HUNTON ANDREWS KURTH LLP
     Riverfront Plaza, East Tower
     951 East Byrd Street
     Richmond, VA 23219
     Telephone: (804) 344-8821

Facsimile: (804) 343-4630
mmcguire@HuntonAK.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

*/s/ Matthew R. McGuire*
Matthew R. McGuire (VSB No. 84194)