IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICVES PROGRAM, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:20-cv-0003 (RDA/TCB) |
| UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, ) ) ) ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on Defendants United States Department of Defense, Barbara Barrett, Mark T. Esper, Ryan D. McCarthy, Thomas B. Modly, and Chad Wolf's ("Defendants") Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") (Dkt. 29) and Plaintiff National Veterans Legal Services Program's ("Plaintiff") Emergency Motion for Preliminary Injunction ("Preliminary Injunction Motion") (Dkt. 21). Considering the Complaint (Dkt. 1), the Motion to Dismiss, the Memorandum in Support of Defendants' Motion to Dismiss (Dkt. 30), Plaintiff's Opposition to the Motion to Dismiss (Dkt. 32), the Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss (Dkt. 33), the Preliminary Injunction Motion, the Plaintiff's Brief in Support of the Preliminary Injunction Motion (Dkt. 22), Defendants' Opposition to Plaintiff's Preliminary Injunction Motion (Dkt. 27), and Plaintiff's Reply Brief in Support of the Preliminary Injunction Motion (Dkt. 28), it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 29) is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Preliminary Injunction Motion (Dkt. 21) is DENIED.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a non-profit organization who helps veterans "correct their military records in order to secure the benefits that they have earned as a result of their military service." Dkt. 1, ¶ 9. To officially correct their military records, veterans must apply to the Discharge Review Boards ("DRBs") and Boards for Correction of Military/Naval Records ("BCMRs") (collectively "the Boards"). *Id.* at ¶¶ 1, 9. Part of Plaintiff's mission is to provide free legal services to veterans who choose to apply to the Boards. *Id.* at ¶ 9. In representing such persons, Plaintiff "relies on access to the Boards' decisions to, among other things, determine how the Boards interpret key military directives and regulations and the circumstances under which they have granted various types of relief." *Id.*

Prior to April 2019, Defendants published many, but not all, of the Boards' decisions on the Department of Defense's Electronic Reading Room website ("Reading Room"). *Id.* at ¶¶ 23, 24, 30, 31. It was determined that the decisions that were posted were not "indexed in a[n] usable and concise form to allow the public to search for the relevant cases." *Id.* at ¶¶ 26, 33.

In April 2019, Defendants removed the Boards' decisions from the Reading Room and posted a notice indicating that

> [t]he Army, Air Force, Navy/Marine Corps, and Coast Guard Review Boards decisional documents normally published in the . . . Reading Room have been temporarily removed to conduct a quality assurance review. We will update this webpage when we have a better estimate (sic) of when the decisional documents will again be available.

*Id.* at ¶ 35.

B.  Procedural Background

On January 2, 2020, Plaintiff filed its Complaint in this Court setting forth the following four causes of action. Dkt. 1. First, Plaintiff alleges that Defendants failed to make all BCMR decisions publicly available and indexed in violation of 10 U.S.C. § 1552, DoD Directive 1332.41, and the APA, 5 U.S.C. § 706. *Id.* at 8. Second, Plaintiff maintains that Defendants unlawfully removed certain BCMR decisions that were made publicly available prior to April 2019 in violation of 10 U.S.C. § 1552, DoD Directive 1332.41, and the APA, 5 U.S.C. § 706. *Id.* at 9. Third, Plaintiff argues that Defendant failed to make all of the DBR decisions publicly available and indexed in violation of 32 C.F.R. § 70.8, DoD Directive 1332.41, and the APA, 5 U.S.C. § 706. *Id.* at 11. Fourth and finally, Plaintiff avers that Defendants unlawfully removed certain DRB decisions that had been publicly available before April 2019 in violation of 32 C.F.R. § 70.8, DoD Directive 1332.41, and the APA, 5 U.S.C. § 706. *Id.* at 12.

Also, on January 2, 2020, Plaintiff filed its original Motion for Preliminary Injunction and withdrew that motion on January 16, 2020. Dkt. Nos. 10, 15. Less than two weeks later, on February 3, 2020, Plaintiff filed a second Motion for Preliminary Injunction. Dkt. 17. On February 5, 2020, Plaintiff again withdrew that Motion for Preliminary Injunction, and refiled it again that same day. Dkt. Nos. 20, 21. The Preliminary Injunction Motion filed on February 5, 2020 is now before the Court. Dkt. 21. On February 18, 2020, Defendants opposed Plaintiff's Preliminary Injunction Motion, and on February 24, 2020, Plaintiff replied to Defendants' Opposition. Dkt. 28.

On March 3, 2020, Defendants filed their Motion to Dismiss. Dkt. 29. On March 6, 2020, Plaintiff opposed Defendants' Motion to Dismiss, and on March 10, 2020, Defendants replied to Plaintiff's Opposition. Dkt. Nos. 32, 33.

On March 13, 2020, the Court heard oral argument on Defendants' Motion to Dismiss (Dkt. 29) and Plaintiff's Preliminary Injunction Motion (Dkt. 21).

These matters are now ripe for decision.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). A district court must dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction exists. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id*.

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Contr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the district court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### III. DISCUSSION

#### A. Standing

"It is the responsibility of the complainant clearly to allege facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The Supreme Court of the United States has further provided that:

> Article II of the Constitution limits the jurisdiction of federal court to "Cases" and "Controversies." U.S. Cost., Art. III § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 560-61). To show "injury in fact," a plaintiff must demonstrate that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Thus, plaintiffs may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

Organizations must also demonstrate that they have Article III standing and may do so under two possible theories. *Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 769 (E.D. Va. 2003) (internal quotations omitted). "The first is an organizational theory which enables an organization to bring suit on its own behalf." *Id.* "The second is a representational theory which allows an organization to sue on behalf of its members." *Id.* Organizational standing is established

5

"if the organization has suffered a concrete and demonstrable injury to the organization's activities – with [a] consequent drain on the organization's resources – constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Id.*

This Court's decision in *City of New York v. U.S. Department of Defense*, which was affirmed by the United States Court of Appeals for the Fourth Circuit, is particularly instructive in determining whether Plaintiff has organizational standing to bring this particular claim. No. 1:17-cv-01464, 2018 WL 1937347 at *3 (E.D. Va. Apr. 24, 2018), *aff'd City of New York v. United States Department of Defense*, 913 F.3d 423, 427 (4th Cir. 2019). In *City of New York* matter, the plaintiffs were

> three municipalities who use[d] the National Instant Criminal Background Check System to carry out their obligations under state law. This system, known as the NICS, [was] managed by the Federal Bureau of Investigation. The Department of Defense (DOD) [was] required under federal law to provide records to the NICS but [had] persistently been unable to fully carry out this obligation. The appellants sued DOD and its constituent military departments to compel the department's more thorough compliance.

913 F.3d at 427. The *New York City* plaintiffs "assert[ed] that the real harm resulting from their denial of access to information they [were] entitled to [was] that they may have issued (or may in the future issue) permits or licenses to prohibited persons." 2018 WL 193747 at *3. In discussing the decision of this Court, the Fourth Circuit noted that this Court dismissed the plaintiffs' claim "holding both that the [plaintiffs] lacked constitutional standing and failed to establish subject matter jurisdiction under the Administrative Procedure Act." *City of New York*, 913 F.3d at 427. This Court reasoned that dismissal was appropriate because plaintiffs'

> allegation require[d] a chain of speculative assumptions, including that DoD's delay in reporting has caused or [would] cause relevant information to be absent at the specific time of Plaintiffs' inquiry regarding an unknown applicant, that the relevant FBI databases queried by the NICS contain[ed] no other disqualifying records for that applicant, that Plaintiffs' own investigations return no other disqualifying information, and that the applicant [was] otherwise entitled to issuance of the permit or license under state and local laws.

6

*City of New York*, 2018 WL 1937347 at *3.

Similarly, in this case Plaintiff alleges that its injury is the "unlawful deprivation of information" – namely, the deprivation of the Boards' previous decisions. Dkt. 32, 6. Plaintiff further maintains that it is injured by the lack of information because "its ability to evaluate veteran cases and participate effectively in the Board review process" "is hindered" by the Boards' failure to post the decisions in the Reading Rooms. Dkt. 32, 7.

However, Plaintiff has failed to establish standing because Plaintiff has not pleaded that in any specific instance Plaintiff was effectively unable to fulfill its mission because of the lack of information that it had. Further, Plaintiff has not pleaded that there has been a certain instance in which it could not fulfill its mission because Defendants have not yet finished redacting and reposting all of its decision to the Reading Room. Thus, this case is factually and analytically similar to *City of New York* in that in Plaintiff's claims "require [] a chain of speculative assumptions." *City of New York*, 2018 WL 193747 at *3. This is true particularly given that Defendants have provided Plaintiff, and all others who are similarly situated, a means for obtaining the decisions which they desire. During the restoration process, any member of the public may contact Defendants with specific requests that they have for the Boards' decisions, and on average, it has taken Defendants seven days to fulfill the request. Dkt. 27, 17, 21-22. The Boards' contact information has been posted on Defendants' website so that the public may request copies of the Boards' decisions. *Id.* at 7. While this alternative means may be perhaps more cumbersome than simply finding the desired Boards' opinions readily available in the Reading Room, in light of this substitute method, it is unclear how Plaintiff's alleged harm is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013). Thus, Plaintiff's Complaint should be dismissed for lack of jurisdiction.

B. Lack of Agency Action

Even if this Court were to find that Plaintiff had standing to bring a claim, this Court would be constrained to dismiss Plaintiffs claims because the Court lacks subject matter jurisdiction on other grounds.

Pursuant to 5 U.S.C. § 704, under the Administrative Procedures Act ("APA"), "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Thus, Plaintiff must demonstrate that Defendants took an "agency action" in order for Plaintiff to meet its burden of showing that this Court has subject matter jurisdiction.

Plaintiff relies on 5 U.S.C. § 706 (1) to argue that Defendants' decision to remove and failure to repost all of its Boards' decisions in the Reading Room is an agency action that should be reviewed by this Court. Section 706 (1) indicates that "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706 (1).

It does not appear that the action of which Plaintiff complains – Defendants' April 2019 decision to remove its Boards' decisions from the Reading Room and its failure to date to repost all of those decisions – is an agency action within the meaning the Administrative Procedures Act.

The Fourth Circuit has clearly held that "'the term action as used in the APA is a term of art that does not include all conduct' on the part of the government." *City of New York*, 913 F.3d at 430 (quoting *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013)). "[T]he APA defines 'agency action' to include 'the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, of failure to act.'" *Id.* at 431 (quoting 5 U.S.C. § 551(13)).

Further, "[w]hen challenging agency action – whether it be a particular action or a failure to act altogether – the plaintiff must therefore identify specific discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations." *City of New York*, 913 F.3d at 431. "Courts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials." *Id.* However, courts are "woefully ill-suited . . . to adjudicate generalized grievances asking [the courts] to improve an agency's performance or operations." *Id.*

Though Plaintiff maintains that it is not making a "broad programmatic attack" on Defendants' lack of expediency in loading its decisions onto the Reading Room for public use, Plaintiff has also suggested that the only reason it had to refile its withdrawn Preliminary Injunction Motion was because Defendants failed to upload all of the Boards' decisions by the parties' agreed upon January 31, 2020 deadline. Plaintiff also indicated in its reply brief on its Preliminary Injunction Motion that

> in a letter to Senator Baldwin, the [Defendants] stated: "All removed cases will be returned to the website not later than April 30, 2020. Posting of new cases will resume not later than May 31, 2020." [ ][Plaintiff] recognizes that decisions need to be properly redacted before they are published to the Reading Room and, as a result, [Plaintiff] is amenable to the deadlines the [Defendants] gave in response to Senator Baldwin's letter. The [Defendant's] prior refusal to live up to agreed-upon deadlines demonstrates that an injunction is necessary to "ensure that the delinquent agency makes serious, 'vigorous' attempts to fulfill its statutory responsibilities."

Dkt. 28, 14.

Defendants have explained that their delay in uploading the decisions is because they are working to ensure that veterans' personal information is redacted from the decisions. Defendants' concern appears to be that they be fully compliant with 10 U.S.C. § 1552(a)(5). 10 U.S.C. § 1552(a)(5) ("Each final decision of a board under this subsection shall be made available to the public in electronic form on a centralized Internet website. In any decision so made available to the public there shall be redacted personally identifiable information."). Because Defendants must

9

review each decision individually and cannot use a computer system to scan for this information, republication of the Boards' decisions has been delayed.

In sum, in light of Plaintiff's actions and pleadings, it appears Plaintiff's main contention is that Defendants are not working fast enough, and Plaintiff is concerned with Defendants' lack of fervor in "fulfill[ing] its statutory responsibilities." This is a critique of the agency's functionality. Said otherwise, at the heart of Plaintiff's complaint is a "generalized grievance asking [this Court] to improve [Defendants'] performance [and] operation." *City of New York*, 913 F.3d at 431. This very situation is one in which the Supreme Court of the United States cautioned against in *Norton v. S. Utah Wilderness All. (SUWA)*, wherein the Court provided that

> [i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates they would necessarily be empowered, as well, to determine whether compliance was achieved – which would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

542 U.S. 55, 62 (2004).

Therefore, because Plaintiff's requests for relief would essentially have this Court assume the task of becoming a supervising court, rather than have the agency, to work out compliance with the broad statutory mandate, this Court finds that Plaintiff has failed to allege an agency action that this Court has jurisdiction to review. Thus, Plaintiff's claim should be dismissed for lack of jurisdiction.

### C. The Preliminary Injunction Motion

Because this Court finds that Plaintiff lacks standing (*supra*, p. 5-7), and that the Court lacks subject matter jurisdiction over Plaintiff's claims (*supra*, p. 7-10), this Court cannot address Plaintiff's Preliminary Injunction Motion. Thus, the Court must deny Plaintiff's Preliminary Injunction Motion.

## IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 29) is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Preliminary Injunction Motion (Dkt. 21) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
April 2nd, 2020

/s/
Rossie D. Alston, Jr.
United States District Judge